UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE GILLETTE COMPANY,<br><br>               Plaintiff/<br>               Counter-Defendant,<br><br>v.<br><br>ENERGIZER HOLDINGS, INC., SCHICK<br>MANUFACTURING, INC., EVEREADY<br>BATTERY COMPANY, INC., and<br>ENERGIZER BATTERY, INC.<br><br>               Defendant/<br>               Counter-Plaintiff. | C.A. No. 03 12455 DPW |

**DEFENDANTS' MOTION FOR SANCTIONS
PURSUANT TO RULE 11(C)
AND REQUEST FOR ORAL ARGUMENT**

Pursuant to Fed. R. Civ. P. 11(c)(1)(A), defendants Energizer Holdings, Inc. ("Energizer

Holdings"), Schick Manufacturing, Inc. ("Schick"), Eveready Battery Company, Inc. ("Eveready

Battery"), and Energizer Battery, Inc. ("Energizer Battery") (collectively, "Energizer")

respectfully request that the Court impose sanctions against plaintiff The Gillette Company

("Gillette") and/or its counsel ("Gillette's counsel")[1] for asserting a frivolous claim in its

Complaint, in violation of Fed. R. Civ. P. 11(b).  As detailed below, Gillette's allegation that the

Schick Intuition cartridge container infringes Claim 1 of U.S. Patent No. 6,499,595 (the "'595

Patent") is baseless, as it is premised upon an objectively unreasonable construction of the claim.

---

[1] A partner from Ropes & Gray, local counsel to Gillette in this action, signed the Complaint.  The obligations imposed by Rule 11 apply to any attorney who signs a complaint, even if that attorney is serving merely as local counsel.  *See Ultra-Temp Corp. v. Advanced Vacuum Systems, Inc.*, 189 F.R.D. 17, 25 n.7 (D. Mass. 1999).

Through this motion, Energizer is seeking the following relief:

- Dismissal with prejudice of all claims relating to the '595 Patent; and

- Reimbursement for all legal fees, costs, and expenses incurred in defending against the frivolous allegation(s), including the fees incurred in preparing and arguing this motion.

## INTRODUCTION

Gillette filed this patent infringement action on or about December 5, 2003.  Although Gillette publicized the lawsuit, it waited until February 5, 2004 (62 days) to serve the complaint on Energizer, which stalled the case for two months.

In its Complaint, Gillette alleges that the cartridge storage container[2] for Schick's Intuition women's razor infringes two Gillette patents (the '595 Patent and U.S. Patent No. 6,415,517 (the "'517 Patent")) – which relate to a sealed storage container and a wall-mounted storage device, respectively.  While Gillette seems intent on competing with Schick in the courtroom rather than the marketplace, its allegation that the Intuition cartridge container infringes Claim 1 of the '595 Patent[3] goes beyond the pale.

Specifically, Claim 1 provides as follows:

A sealed package comprising:

A formed plastic container defining a storage region and having a sealing surface around an entrance to said region,

said container having a bottom wall and at least two opposed side walls each of which has retaining structure integrally formed thereon and protruding inward therefrom, said retaining structure being movable to move outward to permit entry of a cartridge into said storage region and to thereafter move inward to retain said cartridge in said region,

---

[2] To assist the Court in its consideration of this motion, a sample Intuition cartridge container is submitted herewith as Exh. 1 (submitted in separate envelope).

[3] In its Response to Interrogatory No. 2, Gillette identifies only Claim 1 as being infringed by the Intuition storage container.  *See* Exh. 2 hereto.

A shaving cartridge contained within said storage region and retained by said retaining structure, said cartridge including a plastic housing and a plurality of blades, and

A **removable film that is sealed to said sealing surface** and covers said entrance.[4]

The specification and drawings of the '595 Patent describe and depict the "removable film" of Claim 1 (designated as reference numeral 14) as a flat and very thin sheet of plastic. The specification repeatedly refers to this structure as a "cover sheet" or simply a "sheet."[5] This structure is "sealed to the upper sealing surface [] of the container" by heat welding or radio frequency sealing. *See, e.g.,* Exh. 3 at 5:16-18. The resultant structure is evocative of butter, jam/jelly, and honey containers commonly found in restaurants (particularly restaurants that serve breakfast fare), which containers are opened by lifting a corner of the film and peeling it away from the container tub. *See, e.g.,* Exh. 3 at Figs. 10-11 and 1:52-54. The resultant structure is also similar to containers in which disposable contact lenses are stored. *See, e.g.,* U.S. Patent No. 4,691,820 (Sept. 8, 1987).[6]

The Intuition cartridge container charged with infringement of Claim 1 of the '595 Patent does not contain a "removable film that is sealed to said sealing surface."[7] Rather, the Intuition cartridge container has a relatively thick, molded plastic cover with sidewalls. This cover snaps over the rim on the bottom tub portion of the cartridge container. The Intuition cover is not flat, nor can it reasonably be described in any sense as a sheet or a film. Accordingly, the Intuition

---

[4] *See* Exh. 3 ('595 Patent) at Claim 1 (emphasis added).

[5] *See, e.g.,* Exh. 3 at 3:67; 4:3, 4-5, 7-8, 24; 5:17, 21, 23, 36; 6:l, 20, 36, 41, 50.

[6] The attorney of record for the '820 Patent is Donal B. Tobin, now Chief Patent Counsel for The Gillette Company. A true and accurate copy of the '820 Patent is attached hereto as Exh. 4. Gillette did not disclose this patent during prosecution of the '820 Patent.

[7] Given the nature of this motion, Energizer is focusing on the most egregious example of why Gillette's claims are baseless and deserving of sanctions. All non-infringement and/or validity issues will be addressed by way of a motion for summary judgment in the event Gillette's claim survives this motion. Moreover, Energizer expressly reserves the right to make additional and/or modified arguments should Gillette ever provide a substantive explanation for the basis of its claim(s).

cartridge container cannot literally infringe Claim 1 of the '595 Patent because the molded

plastic cover cannot be considered a "film."

Moreover, as shown below, there can be no reasonable dispute that the "snap fit" of the

molded plastic cover performs a substantially different function in a substantially different way

than the sealed, peelable "removable film" claimed in Claim 1 of the '595 Patent, and thus the

Intuition cartridge container cannot infringe that claim under the doctrine of equivalents.

By letter dated April 21, 2004, Energizer's counsel set forth its position and requested

that Gillette's counsel voluntarily withdraw the claims relating to the '595 Patent. *See* Exh. 5

hereto. Unfortunately, Gillette's counsel refused to explain the basis for its infringement claim,

instead stating merely that "[w]e believe that your arguments concerning the meaning of the

claims of the '595 Patent will not be accepted by the Court" and threatening to "ask the Court to

impose sanctions" if Energizer's counsel filed the motion. *See* Exh. 6 hereto. During an April

30, 2004 telephone conference, Gillette's counsel repeated his threat to seek sanctions against

Energizer's counsel if Energizer proceeded with filing its motion.

## ARGUMENT

Rule 11(b) of the Federal Rules of Civil Procedure provides that – by signing and filing a

pleading or motion – an attorney is certifying that "to the best of the person's knowledge,

information, and belief, formed after an inquiry reasonable under the circumstances . . . the

allegations and other factual contentions have evidentiary support. . . ." Rule 11(c) empowers a

court to "impose an appropriate sanction upon the attorneys, law firms, or parties that have

violated subdivision (b) or are responsible for the violation."

The Court of Appeals for the First Circuit has interpreted the language of Rule 11 as

imposing on counsel a standard of "due diligence and objective reasonableness." *See, e.g.,*

*Mariani v. Doctors Assoc., Inc.*, 983 F.2d 5, 7 (1st Cir. 1993).  In the context of a patent

infringement suit, the Federal Circuit – applying Fourth Circuit substantive law – applied a

similar standard of objective reasonableness, ruling that sanctions may issue for a violation of

Rule 11(b)(2) if "a reasonable attorney would have concluded that the claim construction

proposed by [counsel] was frivolous."  *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d

1066, 1072-73 (Fed. Cir. 2002).

Extending these principles to the instant case, it is objectively unreasonable for Gillette to

allege that the Intuition cartridge container infringes Claim 1 of the '595 Patent, and any claim

construction advanced in support of that allegation is, by definition, frivolous.  Specifically, to

infringe Claim 1, the Intuition cartridge container must have a "removable film that is sealed to

said sealing surface. . . ."  However, as demonstrated below, the Intuition storage container has

no "removable film" and no equivalent thereof.

### Infringement Analysis

It is well established that patent infringement involves a two-step analysis.  First, the

Court must construe the claims at issue to determine their scope, and then it must compare the

properly construed claims to the accused device.  *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448,

1454 (Fed. Cir. 1998) (en banc).  An accused device may infringe a patent claim literally or

under the doctrine of equivalents.  Literal infringement requires that the accused device contain

each limitation of the claim exactly.  Any deviation from the claim precludes a finding of literal

infringement.  *See Litton Systems Inc. v. Honeywell Inc.*, 46 U.S.P.Q.2d 1321, 1324 (Fed. Cir.

1998).

While the doctrine of equivalents does not require exact correspondence to every claim

limitation, if a claimed element or its equivalent is not found in the accused device, there can be

no infringement under the doctrine of equivalents.  *See Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 517 U.S. 17, 39-40 (1997).   An element in the accused device is considered an equivalent to a claimed element if the differences between the two are insubstantial or if the element in the accused device performs substantially the same function in substantially the same way to achieve the same result as the claimed element.  *Id.; see also Eagle Comtronics, Inc. v. Arrow Comm'n Labs., Inc.*, 305 F.3d 1303, 1313 (Fed. Cir. 2002). The permissible scope of equivalence under the doctrine is strictly limited by admissions, concessions, and arguments made during prosecution to comply with the requirements of the patent laws (prosecution history estoppel).  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002).  The scope of equivalence is also limited by statements in the patent itself and the scope and content of the prior art.  *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366-67 (Fed. Cir. 1999).

In construing a claim, the analytical focus must begin and remain centered on the language of the claim itself, "for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *See Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112, ¶ 2).  The words of the claim are to be given their ordinary meanings unless the specification or prosecution history indicate otherwise, *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366-67 (Fed. Cir. 2002), and dictionaries are properly consulted to determine such ordinary meanings.  *See Tex Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202-03 (Fed. Cir. 2002).  Where a word has more than one ordinary meaning, the surrounding words in the claim are to be examined to determine which ordinary meaning should be applied. *See Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299-1300 (Fed. Cir. 2003).

Once a disputed claim term is identified by the parties and its plain meaning is ascertained by the Court, "the next step is to examine the written description and the drawings to confirm that the patentee's use of the disputed terms is consistent with the meaning given to it by the Court." *See Rexnord Corp. v. The Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).  An examination of the written description and drawings is "necessary to determine whether the patentee has disclaimed subject matter or has otherwise limited the scope of the claims." *Id.* (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001)).  After examining the written description and the drawings, the same measures must be taken with the prosecution history, as "statements made during the prosecution of a patent may affect the scope of the invention." *Id.* (further citation omitted).

### The Ordinary Meaning of the Word "Film" Is a Flat and Very Thin Sheet, Skin, or Coating Less than 10 Mils in Thickness

The ordinary meaning of "film" is "a fine, thin skin, surface, layer, or coating." *See Webster's NewWorld Dictionary* (Third College Edition) (1994) (Exh. 7 hereto).  The *McGraw-Hill Dictionary of Scientific and Technical Terms* (1974) defines "film" as "A thin, flexible, transparent sheet of plastic, adhesive, rubber, or other material." *See* Exh. 8 hereto.

In the specific context of plastics, a "film" is defined as follows:

> (1) Customarily in the plastics industry, web of plastic that is 0.25 mm or less in thickness.  Thicker webs are called sheet.  Films are made by extrusion, casting from solution, and calendaring. *See Whittington's Dictionary of Plastics* (3d ed. 1993) (Exh. 9 hereto).

These definitions are consistent with those appearing in online technical dictionaries and glossaries.  For example, the Thermoforming Glossary on Empire West's website defines "film" as a term "for sheeting having a nominal thickness not greater than 0.010 inch." *See* Exh. 10 hereto (excerpt from www.empirewest.com/academy/glossary); *see also* Extrusion Glossary of Terms

(Polydynamics Inc. website) (www.polydynamics.com/glossary2.htm) (providing that "films" are "usually considered to be a web under 10 mils (0.010 inch or 250 microns) thick") (Exh. 11 hereto); *see also* Dow Chemical website (www.dow.com/polyolefins/na/process/blownfilm.htm) ("Films are typically defined as less than 0.254 mm (10 mils) in thickness") (Exh. 12 hereto); *see also* Plastics Glossary (Canadian Plastics Industry Association Web Site) (www.cpia.ca) (defining "film" as "sheeting material having a nominal thickness not greater than 10 mil").  *See* Exh. 13 hereto.  A "sheet" is defined as "a broad, thin, usually rectangular piece of any material."[8]  A "sheet" is an "unbounded, two-dimensional shape."  *See* Exh. 15 (hyperdictionary.com) (emphasis added). Accordingly, in the context of plastics, the ordinary meaning of the word "film" is a flat, planar, very thin sheet, skin, or coating less than 10 mils in thickness.

### The Specification and Drawings Confirm that the '595 Patent Uses the Word "Film" Consistent with Its Ordinary Meaning

Having ascertained the ordinary meaning of "film," the Court must then examine the patent's disclosure and drawings and the file history to determine whether Gillette disclaimed subject matter or has otherwise limited the scope of the claims.  *See Rexnord*, 274 F.3d at 1342. The Court must construe the meaning of claim language "according to its usage and context." *See Metabolite Labs., Inc. v. Competitive Techs., Inc.*, 2004 U.S. App. LEXIS 11248 (Fed. Cir. June 8, 2004) at **7-8.  Indeed, "[i]n most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention."  *Id.* at *8.

The '595 Patent's specification describes "film" in a manner that is consistent with the word's ordinary meaning.  For example, the film (identified by reference numeral 14 in the figures of the '595 Patent) is referred to throughout the specification as a "cover sheet" or simply

---

[8] *See* Exh. 14 hereto (*Webster's NewWorld Dictionary* (Third College Ed.) (1994)).

a "sheet,"[9] and is only depicted as having a planar structure, confirming that the film is a flat, paper-thin coating. Moreover, the specification also discloses in great detail a multi-layered laminate film with a thickness of 3.48 mils – well within the conventional definition (less than 10 mils) for a film. *See* '595 Patent at 5:20-35. The specification and the drawings disclose no other structure, as a preferred embodiment or otherwise, and certainly no structure is described that has sidewalls capable of a "snap fit" connection with the bottom, or tub, of the container.

Accordingly, construed according to its usage and context as established by the disclosure of the '595 Patent, the "removable film" of Claim 1 refers to a very thin (not thicker than 10 mils), flat sheet, skin, or coating.

### The Prosecution History Confirms that the '595 Patent Uses the Word "Film" Consistent with Its Ordinary Meaning

The prosecution history for the '595 Patent must also be examined to determine the meaning of the term "film" according to its usage and context. Doing so reinforces that the '595 Patent uses the term "removable film" consistent with its ordinary meaning, namely, a very thin (not thicker than 10 mils), flat covering.

Specifically, Gillette refers to the structure as a "covering film." Moreover, in response to a refusal of Claim 1, Gillette maintained that "the invention assigns the role of barrier protection and deadfold to a relatively high-tech engineered and expensive film and put requirement for structural strength on the shoulders of a cheap plastic molding," confirming that the film should have no rigidity or firmness. *See* Exh. 16 hereto (excerpts from file history). There is nothing in the prosecution history that supports a departure from the ordinary meaning of the term "removable film," as used in Claim 1.

### It Is Objectively Unreasonable for Gillette to Allege that the

---

[9] *See, e.g.,* Exh. 3 at 3:67; 4:3, 4-5, 7-8; 24; 5:17, 21, 23, 36; 6:1, 20, 36, 41, 50.

**Intuition Container Literally Infringes Claim 1 of the '595 Patent**

In light of the construction of the term "removable film," it is objectively unreasonable to allege that the Intuition cartridge container literally infringes Claim 1 of the '595 Patent. The cover of the Intuition cartridge container is not flat, i.e., it is not a sheet, as required of a film. Rather, the Intuition container cover has a molded three-dimensional profile that includes side walls. Further, the cover of the Intuition cartridge container does not incorporate a very thin (less than 10 mils) skin or coating, and it is not capable of being peeled or possessing deadfold characteristics. In fact, the thickness of the Intuition cover measures approximately 35 mils, nearly ten times thicker than the five-layer film disclosed in the '595 Patent and more than three times thicker than a film should be, according to the word's ordinary meaning. Simply put, the cover of the Intuition storage container is not a film.

The film disclosed and claimed in the '595 Patent can be peeled, and it has the capacity to possess deadfold characteristics. The Intuition cover cannot perform either of these functions. It is a relatively rigid, molded cover with sidewalls that makes a snap-fit connection with the base of the container. The Intuition cover is not removed by peeling it away from the storage container; it is removed by applying force sufficient to dislodge the cover from the undercut beneath the rim of the container. The Intuition cover pops off the container; it does not peel off. Further, the Intuition cover retains its molded shape when opened and does not have the capacity to possess deadfold characteristics. The relative rigidity of the Intuition cover makes it impossible to partially remove it from the container. It is either on or it is off.

In light of the foregoing, it is objectively unreasonable to contend that the Intuition literally infringes Claim 1 of the '595 Patent.

**It Is Objectively Unreasonable for Gillette to Allege that the Intuition Container Infringes Claim 1 of the '595 Patent Under the Doctrine of Equivalents**

Gillette's allegations of infringement remain equally baseless under the doctrine of equivalents. While the invention of the '595 Patent discloses a flat, planar, paper-thin film that is heat-welded or radio frequency-sealed to a sealing surface, the Intuition container has a snap-fit, molded, three-dimensional plastic cover that is nearly ten times thicker than the "removable film" of the '595 Patent. It is objectively unreasonable for Gillette to argue that these differences are insubstantial, as a flat, paper-thin film cannot be equivalent to a three-dimensional, molded plastic cover with sidewalls.

Indeed, the cover of the Intuition cartridge container does not perform substantially the same function in substantially the same way to achieve the same result as the removable film of the '595 Patent. Gillette's invention performs the function of covering the entrance of the storage compartment by heat-welding or radio frequency-sealing a film to the bottom, or tub, of the container. *See* Exh. 3 at 5:17-19. By contrast, the cover of the Intuition cartridge container is decidedly low-tech, performing this function by snapping over an undercut located just beneath the rim of the tub – much like a cover matingly engages many typical plastic storage containers (that are well known in the art).

In addition, the removable film of the '595 Patent performs the function of "permit[ting] easy access to the cartridge"[10] situated in the container by being peelable and capable of employing deadfold characteristics, so that "when [the] cover sheet is peeled open with a portion still attached to the container, and then released by the user's hand, [the] sheet *remains folded back or bended back after opening. . . .*" *See* Exh. 3 at 6:1-4 (emphasis added); *see also* Exh. 16. As detailed above, the cover of the Intuition cartridge container has no peelability and is not capable of possessing deadfold characteristics. The container is either open or closed; there is no

11

in-between position because the relatively rigid preformed plastic cover cannot remain partially

open.  Moreover, the Intuition cover is far too thick and rigid to be "peeled" open.  The

container's cover disengages or pops off; it cannot be peeled off like a skin or a film.[11]

In light of the foregoing, it is disingenuous for Gillette to contend that the differences

between the "removable film" claimed in Claim 1 and the cover of the Intuition cartridge

container are insubstantial or that the components perform substantially the same function in

substantially the same way to achieve the same result.  *See Eagle Comtronics,* 305 F.3d at 1313.

Accordingly, it is objectively unreasonable to allege that the Intuition cartridge container

infringes Claim 1 of the '595 Patent under the doctrine of equivalents.  *See K-2 Corp. v. Salomon*

*S.A.*, 191 F.3d 1356, 1367 (Fed. Cir. 1999) (where patent document expressly identifies a role for

a claim limitation, the DOE cannot be used to capture subject matter that does not substantially

fill that role) (citing *Warner-Jenkinson*, 520 U.S. at 40).

---

[10] *See* Exh. 3 at 6:1-4.

[11] It also bears noting that the – unlike the "removable film" of Claim 1 – the cover of the Intuition storage container is recloseable, i.e., once removed, it can be closed again by simply snapping it back over the rim of the container.  *See* Exh. 1.

**Gillette Has Failed and Refused to Offer**
**Any Support for Its Claim of Infringement**

To date, Gillette has failed and refused to offer any meaningful support for its claim of

infringement – thereby necessitating this motion.  The Complaint asserts only a vague allegation

of infringement, and, in response to Energizer's April 21, 2004 letter (which urged Gillette to

voluntarily withdraw all claims relating to the '595 Patent), Gillette's counsel refused to state the

basis for its theory of infringement.  *See* Exh. 6 hereto.

The only "support" offered by Gillette appears in its sworn interrogatory answers,

wherein Gillette asserts that "[t]he Intuition protective tub includes a removable film that is

sealed to sealing surface of the tub to cover the entrance to the storage region."  *See* Exh. 2.  In

other words, Gillette argues that the Intuition cartridge container has a removable film because it

has a removable film.  To buttress this circular argument, Gillette cites a page from the Intuition

website ([www.schickintuition.com](www.schickintuition.com)) (copy attached hereto as Exh. 17), which explains that

"[e]ach cartridge is individually sealed in a protective recloseable tub for storage in the shower."

Thus, Gillette would apparently have the Court believe that Schick's use of the word "sealed" in

its marketing materials obviates the need to establish that the Intuition cartridge container has a

"removable film," as required by Claim 1.  This argument is nonsensical and cannot rescue

Gillette's baseless claim of infringement.

**Energizer Is Not Improperly Importing Limitations Into Claim 1**

Like every patentee accused of stretching its patent monopoly beyond recognition,

Gillette will undoubtedly argue that Energizer is attempting to import into the claim limitations

from the specification and from the descriptions of the preferred embodiments.  The Court

should not be fooled by this argument.

Energizer is not improperly importing limitations into Claim 1.  As explained above, one

must examine the '595 Patent's specification and prosecution history to construe the claim

"according to its usage and context."  *See Metabolite*, 2004 U.S. App. LEXIS 11248 at **7-8.

Moreover, the numerous references to "cover sheet," "peel," and "deadfold" – all of which

undermine any claim of infringement against the Intuition container – cannot be dismissed as

mere descriptions of preferred embodiments because these characteristics are essential to the

invention disclosed in the '595 Patent.  For example, "peeling" (used repeatedly throughout the

disclosure) describes how the "*removable* film" is *removed*.

That Energizer is not improperly importing limitations into Claim 1 is perhaps best

confirmed by last paragraph of the specification:

> Other embodiments of the invention are within the scope of the claims. . . .
> Cover sheet 14 could, in some applications, be made of metal foil, *which will*
> *have the desired deadfold characteristics*.  See '595 Patent at 7:18-34
> (emphasis added).

This passage confirms that – regardless of any particular embodiment – the cover of the claimed

container must be a film capable of exhibiting deadfold characteristics.  The Intuition cover has

no such capability.

In sum, the Intuition storage container has no "removable film" and therefore cannot

literally infringe Claim 1 of the '595 Patent.  The Intuition storage container also contains no

equivalent to a "removable film," and thus it cannot infringe Claim 1 under the doctrine of

equivalents.  There is simply no plausible way that Gillette or its counsel could have performed

an infringement analysis on the Intuition storage container and "conclude[d] that there is a

reasonable basis for a finding of infringement."  Accordingly, the Court should exercise its

power to impose sanctions under Rule 11(c).  *See View Engineering, Inc. v. Robotic Vision*

*Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (noting that inability "to demonstrate to both

14

the court and the alleged infringer exactly why [patent holder] believed before filing the claim

that it had a reasonable chance of proving infringement . . . should ordinarily result in the district

court expressing its broad discretion in favor of Rule 11 sanctions").

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court impose

sanctions against Gillette and/or its counsel for including a baseless claim of infringement in its

Complaint.


**WHEREFORE**, Defendants respectfully request that the Court:

1.    Allow this Motion;

2.    Dismiss with prejudice any and all claims relating to infringement of the '595

Patent;

3.    Order Gillette's counsel to reimburse Energizer for the fees, costs, and expenses

incurred in defending the claims relating to the '595 Patent, including the fees incurred in

preparing and arguing this motion; and

4.    Award such further and additional relief as this court deems appropriate under the

circumstances.

15