UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| THE GILLETTE COMPANY,<br><br>           Plaintiff/<br>           Counter-Defendant,<br><br>v.<br><br>ENERGIZER HOLDINGS, INC., SCHICK MANUFACTURING, INC., EVEREADY BATTERY COMPANY, INC., and ENERGIZER BATTERY, INC.<br><br>           Defendant/<br>           Counter-Plaintiff. | C.A. No. 03 12455 DPW |

**DEFENDANTS' REPLY TO GILLETTE'S OPPOSITION
TO MOTION FOR SANCTIONS PURSUANT TO RULE 11(c)**

In opposition to Energizer's[1] *Motion for Sanctions Pursuant to Rule 11(c)*, plaintiff The Gillette Company ("Gillette") fails to establish any objectively reasonable construction of the '595 Patent that would read on the Intuition tub, i.e., a tub with a snap-fit, molded, three-dimensional lid, with sidewalls, that can be both opened and closed repeatedly.[2] Rather, in clear contradiction to the ordinary meaning of the term "removable film,"[3] and without pointing to anything in the specification or the prosecution history suggesting an intention to deviate from

---

[1] Defendants Energizer Holdings, Inc. ("Energizer Holdings"), Schick Manufacturing, Inc. ("Schick"), Eveready Battery Company, Inc. ("Eveready Battery"), and Energizer Battery, Inc. ("Energizer Battery") shall be referred to herein collectively as "Energizer."

[2] To assist the Court in its consideration of this motion, Energizer submitted a sample Intuition storage tub, which was attached as Exhibit 2 to Energizer's Motion.

[3] At the time that Energizer filed its *Motion for Sanctions Pursuant Rule 11(c)*, Gillette had alleged infringement of only two claims of the '595 Patent. Since the filing of Energizer's Motion, Gillette has amended its interrogatory responses, alleging

the term's ordinary meaning, Gillette would have the Court ignore well established principles of claim construction – and common sense – to construe the claim in a manner that would enable it to read on the Intuition product. Tellingly, Gillette fails to cite a single dictionary to counter the numerous dictionaries cited by Energizer in support of the ordinary meaning of the term "film." Instead, Gillette identifies a grand total of *two* references (apparently industrial grade "films") whose thickness exceeds the thickness (10 mils) encompassed in the common and ordinary definition of the word, and a handful of patents that specifically define a "film" to include films with a thickness both less than *and* greater than 10 mils.

Gillette's opposition is successful insofar as it creates the illusion that the relief Energizer seeks necessitates a complex, fact-intensive analysis when, in fact, the Rule 11 issue before this Court is quite straightforward. Could a reasonable attorney looking at the Intuition product conclude that the lid of the storage tub is a "film?" The answer is a resounding "no."

The extrinsic evidence proffered by Gillette does not – and cannot – overcome the fact that it is objectively unreasonable to allege that the Intuition tub infringes the '595 Patent. Indeed, the only way for Claim 1 to read on the Intuition tub is to violate the fundamental tenets of claim construction by either: (1) arbitrarily reading into the term "removable film" the physical characteristics of the Intuition lid; or (2) deleting (or simply ignoring) limitations to Claim 1 that Gillette itself espoused during the prosecution of the '595 Patent to distinguish prior art. Neither approach is permissible under well established precedent, and thus neither leads to an objectively reasonable claim construction.

---

infringement of additional claims. Each of these claims recites a "removable film," and, therefore, Energizer's arguments in its motion remain unchanged.

  **1.** **The Ordinary Meaning of "Film" Precludes Gillette From Offering an Objectively Reasonable Claim Construction That Reads on the Intuition Lid.**

Despite repeated requests during this litigation, Gillette has yet to offer an objectively reasonable construction of the '595 Patent that could lead to a finding of infringement. Indeed, while Gillette claims to be in possession of a "wealth of evidence supporting"[4] its construction of "film," it fails to cite a single dictionary definition aligned with its position. Instead, Gillette, after scouring the World Wide Web, identifies a handful of extrinsic references to "films" that do not comport with the well established and ordinary meaning of that word (i.e., that a "film" is ordinarily understood to be limited to 10 mils in thickness).

To be infringing, the Intuition tub must contain a "removable film that is sealed to [a] sealing surface." Whether a surface constitutes a "film" cannot be determined based on its thickness alone. Rather, as confirmed by the specification and the prosecution history, a "film" (for purposes of the '595 Patent) must be a thin, flat sheet or coating. Moreover, it must be flexible so that it can be peeled away from its surface. These limitations are not the product of Energizer's imagination; they appear repeatedly throughout the specification and the prosecution history and are central to the invention.

No reasonable attorney could examine the lid of the Intuition tub and conclude that it is a "film" – whether that person relied simply on common sense, sought guidance from the specification and prosecution history of the '595 Patent, or consulted a technical dictionary. Specifically, the Intuition lid:

- is made from molded plastic, is relatively thick and rigid, and provides structural integrity to the tub itself;

- has sidewalls, making it a three-dimensional cover rather than a thin, flat sheet;

---

[4] *See* Gillette Opposition at 1.

- has no deadfold characteristics (i.e., it cannot be partially peeled);
- "snap-fits" over the rim of the Intuition tub, and cannot be partially removed; and
- is re-usable, i.e., it can be detached and re-attached repeatedly.

The foregoing characteristics remove the Intuition tub from Claim 1's narrow scope.

Gillette fails to point to *anything* in the specification, drawings, or prosecution history that would support a construction of the phrase "removable film" that would be broad enough to read on the Intuition tub.[5] Instead, Gillette relies on extrinsic evidence (such as battery patents and industrial grade products) to support its contention that Energizer's claim construction is "arbitrary." *See* Gillette Opposition at 6-10.

Even if these extrinsic references are credited (which they should not be), they do not establish that a reasonable construction of Claim 1 can read on the Intuition lid. Indeed, Gillette's extrinsic references, themselves, confirm that a "film" should either be planar (*see*, *e.g.*, Gillette Opposition at Exhs. E, F, and J) or can be formed into a non-planar shape, usually through the use of heat (*see*, *e.g.*, Gillette Opposition at Exh. I).[6] None of these extrinsic references remotely suggests that a film can be a rigid, molded, snap-fitting lid with sidewalls.

Similarly misplaced is Gillette's reliance on internal Energizer documents to suggest that the word "film," as used in the '595 Patent, is broad enough to apply to virtually any covering imaginable. *See* Gillette Opposition at 6-7 and Exhs. G and H. Unlike in *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367 (Fed. Cir. 2004), where the Federal Circuit indicated that a

---

[5] Any construction of Claim 1 that would be broad enough to read on the Intuition product would have to read on essentially anything that covers a cavity. By definition, that claim would be invalid, since claims are to be construed in an attempt to maintain validity.

[6] Gillette's desperation shows clearly in that the other two references it cites have no bearing at all on the subject matter of the '595 Patent: a definition of "film" that means fine layers of dust, and a passing reference to a "film" coating in a patent relating to a gel-coated pill are inapposite to claim construction for the '595 Patent.

defendant's internal documents referring to its five-layer invention could support a claim of infringement where the claim specifically recited the term "five layers," the Energizer documents in question do not use the term "film" in reference to the allegedly infringing product. To the contrary, both of the Energizer documents cited by Gillette concern so-called "blister packaging," the packaging that surrounds the entire Intuition product, which often includes the razor handle and/or the refill tubs.

Moreover, Gillette fails to appreciate (or mention) that neither document uses the term "film" alone. The first document refers to the blister packaging as "film/material." *See* Gillette Opposition at Exh. G (SCH-I 000340). The second document uses the term "plastic (film)," and, importantly, uses the term to describe a characteristic that the Intuition blister pack *lacks*, namely, that it cannot be grabbed for the purpose of opening the package. *Id.* at Exh. H (SCH-I 000346). These documents are a far cry from those at issue in *AFG*, and they provide no basis for stretching the bounds of the '595 Patent to permit even the possibility of infringement by a product containing a relatively thick, molded lid, with sidewalls, that snaps over an undercut on the companion tub, that cannot be partially peeled open, and which can be opened and closed repeatedly.

In short, without the benefit of a single dictionary and without any support in the specification or the prosecution history for deviating from the word's ordinary meaning, Gillette is attempting to peddle a definition of "film" that would encompass virtually anything that covers a cavity. Gillette is selling the patent equivalent of "snake oil."

      2.      **Gillette's Affirmative Statements to Distinguish Prior Art During Prosecution of the '595 Patent Limits Claim 1 to Films with Deadfold Characteristics that Do Not Provide Structural Rigidity to the Tub**

The intrinsic evidence confirms that the "film" of Claim 1 is limited to a film possessing deadfold characteristics. It is well established that a claim is properly limited where the inventors expressly limit the scope of the invention by distinguishing prior art in the prosecution history. *Liebel-Flarsheim Co. v. Mallinckrodt Inc.,* 358 F.3d 898, 907 (Fed. Cir. 2004) (citing *Watts v. XL Sys., Inc.*, 232 F.3d 877, 883 (Fed. Cir. 2000)). Here, Claim 1 is limited to films that have deadfold characteristics, because Gillette expressly distinguished the Iten reference, U.S. Patent No. 3,970,194 ("Iten"), in its October 2, 2001 Response to a rejection of Claim 1. Specifically, Gillette stated that "[t]he invention assigns the role of barrier protection and deadfold to a relatively high-tech engineered and expensive film…." *See* Gillette's October 2, 2001 Response at 13 (copy attached hereto as Exhibit 1). Gillette made the *same argument* in its March 26, 2002 Response to a rejection of Claim 1, again distinguishing the Iten reference. *See* Gillette's March 26, 2002 Response (copy attached as Exhibit 16 to Energizer's Motion). These were not "passing references," as Gillette suggests. Rather, Gillette *twice* affirmatively distinguished prior art that had been cited by the Examiner in rejecting Claim 1, and, in doing so, described the invention as having deadfold characteristics.

Claim 1 is further limited to films that do not provide structural rigidity, as Gillette specifically distinguished Iten on that basis, too, in both the October 2, 2001 and March 26, 2002 Responses. *See* Gillette's October 2, 2001 Response at 13 and Gillette's March 26, 2002 Response at 9. Having limited its claim to avoid prior art during prosecution, Gillette cannot now be permitted to reclaim abandoned subject matter under the doctrine of claim differentiation, or otherwise. *See Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) (stating that the doctrine of claim differentiation cannot broaden claims

6

beyond their correct scope, and that intrinsic evidence, such as prosecution history, overcomes any presumption arising from the doctrine of claim differentiation) (internal citations omitted).

Construed as the claim must be, the Intuition lid, which has no deadfold characteristics and which provides structural integrity to the Intuition tub, cannot possibly infringe the '595 Patent.

### 3. Energizer's Motion Is Not Inconsistent With the Position Energizer Took at the Initial Scheduling Conference.

Gillette in its opposition quotes extensively from the transcript of the Rule 16 conference, suggesting that Energizer's counsel misled the Court by seeking a lengthy period for discovery while simultaneously contemplating the filing of a Rule 11 motion. This argument is specious. Gillette has apparently forgotten that its complaint asserts *two patents* against Energizer – the '595 Patent and the '517 Patent. Energizer's Rule 11 motion seeks only the dismissal of the allegations concerning the '595 Patent, and thus the Rule 11 motion, if granted, will not dispose of the entire action. While Energizer believes that the allegations concerning the '517 Patent are weak, they are not objectively baseless and will require extensive discovery, particularly on the issue of patent validity (or invalidity).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court impose the requested sanctions against Gillette and/or its counsel for including a baseless claim of infringement in its Complaint.

**WHEREFORE**, Defendants respectfully request that the Court:

1. Allow this Motion;

  2.  Dismiss with prejudice any and all claims relating to infringement of the '595 Patent;

  3.  Order Gillette's counsel to reimburse Energizer for the fees, costs, and expenses incurred in defending the claims relating to the '595 Patent, including the fees incurred in preparing and arguing this motion; and

  4.  Award such further and additional relief as this court deems appropriate under the circumstances.

    Respectfully submitted,

    ENERGIZER HOLDINGS, INC., SCHICK MANUFACTURING, INC., EVEREADY BATTERY COMPANY, INC., and ENERGIZER BATTERY, INC.

    By their Attorneys,

    /s/
    Richard D. Rochford, BBO No. 423950
    Jason C. Kravitz, BBO No. 565904
    Maia H. Harris, BBO No. 648208
    NIXON PEABODY LLP
    100 Summer Street
    Boston, MA 02110
    Telephone: (617) 345-1000
    Facsimile: (617) 345-1300

    Randall G. Litton (admitted *pro hac vice*)
    Matthew J. Gipson (admitted *pro hac vice*)
    Ginta D. Kukainis (admitted *pro hac vice*)
    PRICE, HENEVELD, COOPER, DEWITT & LITTON, LLP
    695 Kenmoor, S.E.
    P.O. Box 2567
    Grand Rapids, Michigan 49501-2567
    616/949-9610
    616/957-8196 (facsimile)

August 27, 2004

CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of August, 2004, I served a copy of the within document by hand upon:

>Levina Wong
>ROPES & GRAY
>One International Place
>Boston, MA  02110-2624

And by overnight mail upon:

>Catherine Nyarady
>PAUL, WEISS, RIFKIND, WHARTON GARRISON LLP
>1285 Avenue of the Americas
>New York, NY  10019-6064

/s/
Maia H. Harris